UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIMOTHY WILDER, | ) | CIVIL ACTION NO. 4:22-CV-83 |
| Plaintiff | ) | |
| | ) | |
| | ) | |
| v. | ) | (ARBUCKLE, M.J.) |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

## I.  INTRODUCTION

Plaintiff Timothy Wilder, an adult who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits under Title II of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g).

This matter is before us upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, we find the Commissioner's final decision is supported by substantial evidence. Accordingly the Commissioner's final decision will be AFFIRMED.

## II.    BACKGROUND & PROCEDURAL HISTORY

On June 18, 2020, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 15; Doc. 8-2, p. 16).  In this application, Plaintiff alleged he became disabled on February 26, 2019, when he was thirty-three years old, due to the following conditions: multiple sclerosis, obesity, anxiety, depression, adjustment disorder, vertigo, nerve pain, and dizziness. (Admin. Tr. 247; Doc. 8-6, p. 14). Plaintiff alleges that the combination of these conditions affects his ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, see, complete tasks, concentrate, understand, and follow instructions. (Admin. Tr. 268; Doc. 8-6, p. 35). Plaintiff alleges that these conditions also affect his memory. *Id.* Plaintiff completed four or more years of college. (Admin. Tr. 248; Doc. 8-6, p. 15). Before the onset of his impairments, Plaintiff worked as a bookkeeper. (Admin. Tr. 22-23; Doc. 8-2, pp. 23-24).

On September 21, 2020, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 15; Doc. 8-2, p. 16). On March 2, 2021, Plaintiff's application was denied at the reconsideration level. *Id.* On March 15, 2021, Plaintiff requested an administrative hearing. *Id*.

On June 17, 2021, Plaintiff, assisted by his counsel, appeared and testified during a hearing before Administrative Law Judge Sharon Zanotto (the "ALJ"). *Id*.

On August 4, 2021, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 24; Doc. 8-2, p. 25). On August 13, 2021, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 213; Doc. 8-4, p. 74).

On December 3, 2021, the Appeals Council denied Plaintiff's request for review.  (Admin. Tr. 1; Doc. 8-2, p. 2).

On January 15, 2022, Plaintiff filed a complaint in the district court. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's decision denying the application is erroneous and is not supported by substantial evidence. (Doc. 1, ¶ 22). As relief, Plaintiff requests that the court reverse the final decision and enter an order awarding benefits. (Doc. 1, pp. 6-7).

On March 8, 2022, the Commissioner filed an answer. (Doc. 7). In the answer, the Commissioner maintains that the decision denying Plaintiff's application is correct and is supported by substantial evidence. (Doc. 7, ¶ 10). Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 8).

Plaintiff's Brief (Doc. 12) and the Commissioner's Brief (Doc. 14) have been filed. Plaintiff did not file a reply.  This matter is now ready to decide.

## III.   STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals. We will also discuss the standards relevant to the resolution of the specific issues Plaintiff raises in this case.

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[1] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[2] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[3] A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.[4] But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions

---

[1] *See* 42 U.S.C. § 405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[2] *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

[3] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[4] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[5] "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole."[6]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; *see*, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[7]

---

[5] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[6] *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

[7] *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

In practice, this is a twofold task. First, the court determines whether the final decision is supported by substantial evidence. To accomplish this task, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[8] In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[9]

Second, the court must ascertain whether the ALJ's decision meets the burden of articulation the courts demand to enable judicial review. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n.3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular

---

[8] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[9] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[10]

**B.    STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[11] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[12] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.[13]

---

[10] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

[11] 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).

[12] 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505(a).

[13] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[14] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[15]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[16] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[17]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents

---

[14] 20 C.F.R. § 404.1520(a).

[15] 20 C.F.R. § 404.1520(a)(4).

[16] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1).

[17] 20 C.F.R. § 404.1545(a)(2).

him or her from engaging in any of his or her past relevant work.[18]  Once this burden

has been met by the claimant, it shifts to the Commissioner at step five to show that

jobs exist in significant number in the national economy that the claimant could

perform that are consistent with the claimant's age, education, work experience and

RFC.[19]

### C.    STANDARDS GOVERNING THE ALJ'S EVALUATION OF MEDICAL OPINIONS & PRIOR ADMINISTRATIVE MEDICAL FINDINGS

The Commissioner's regulations carefully define the sources and types of

statements that can be considered "medical opinions."[20] The regulations also

recognize another type of statement that does not meet the strict definition of medical

opinion, but is nonetheless evaluated under the same framework. This type of

statement is called a "prior administrative medical finding" and is, in layman's

terms, a state agency consultant's medical opinion.[21]

The regulatory framework for evaluating medical opinions and prior

administrative medical findings includes both factors to guide the analysis, and very

---

[18]42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1512; *Mason*, 994 F.2d at 1064.

[19] 20 C.F.R. § 404.1512(b)(3); *Mason*, 994 F.2d at 1064.

[20] 20 C.F.R. § 404.1502(d) (defining medical source); 20 C.F.R. § 404.1513(a)(2) (defining the types of statements that are medical opinions).

[21] 20 C.F.R. § 404.1513(a)(5) (defining prior administrative medical finding).

specific articulation requirements that must be met in addition to the well-established requirements that apply generally to the ALJ's decision as a whole.

This regulation directs that an ALJ's consideration of competing medical opinions and prior administrative medical findings is guided by the following factors:

(1) the extent to which the medical source's opinion is supported by relevant objective medical evidence and explanations presented by the medical source (supportability);

(2) the extent to which the medical source's opinion is consistent with the record as a whole (consistency);

(3) length of the treatment relationship between the claimant and the medical source;

(4) the frequency of examination;

(5) the purpose of the treatment relationship;

(6) the extent of the treatment relationship;

(7) the examining relationship;

(8) the specialization of the medical source; and

(9) any other factors that tend to support or contradict the opinion.[22]

---

[22] 20 C.F.R. § 404.1520c(c).

The most important of these factors are the "supportability" of the opinion and the "consistency" of the opinion.[23] Unlike prior regulations, under the current regulatory scheme, when considering medical opinions and prior administrative medical findings, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."[24]

The Commissioner's regulations also provide several "articulation" requirements. First, the ALJ is always required to explain how he or she considered the "supportability" and "consistency" of a medical source's opinion or a prior administrative finding.[25] Second, the ALJ is only required to articulate how he or she considered the other factors if there are two equally persuasive medical opinions about the same issue that are not exactly the same.[26] Third, if one medical source submits multiple medical opinions, an ALJ will articulate how he or she considered the medical opinions from that medical source in a single analysis.[27] Fourth, an ALJ is not required to articulate how evidence from non-medical sources is considered

---

[23] 20 C.F.R. § 404.1520c(b)(2).

[24] 20 C.F.R. § 404.1520c(a).

[25] 20 C.F.R. § 404.1520c(b)(2).

[26] 20 C.F.R. § 404.1520c(b)(3).

[27] 20 C.F.R. § 404.1520c(b)(1).

based on the 20 C.F.R. §§ 404.1520c and 416.920c factors.[28] Fifth, the ALJ is not required to articulate or provide any analysis about how he or she considers statements on issues reserved to the Commissioner or decisions by other governmental or nongovernmental entities.[29]

### D.   GUIDELINES FOR THE ALJ'S EVALUATION OF MEDICAL DETERMINABILITY AT STEP TWO

At step two of the sequential evaluation process, the ALJ considers whether a claimant's impairment is (1) medically determinable or non-medically determinable, and (2) severe or non-severe; this step is essentially a threshold test.[30]

To be considered medically determinable, an impairment must be established by objective medical evidence from an acceptable medical source.[31] A claimant's statement of symptoms, a diagnosis that is not supported by objective evidence, or a medical opinion not supported by objective evidence, is not enough to establish the existence of an impairment.[32] A claimant's symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect a

---

[28] 20 C.F.R. § 404.1520c(d).

[29] 20 C.F.R. § 404.1520b(c).

[30] 20 C.F.R. § 404.1520(a)(4)(ii).

[31] 20 C.F.R. § 404.1521.

[32] 20 C.F.R. § 404.1521; 20 C.F.R. § 404.1502.

claimant's ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment is present.[33]

Symptoms or limitations that a claimant alleges are caused by a non-medically determinable impairment are excluded from an ALJ's RFC assessment.

### E.   EVALUATING CHALLENGES TO AN ALJ'S RFC ASSESSMENT

One oft-contested issue in Social Security Appeals relates to the claimant's residual capacity for work in the national economy. A claimant's RFC is defined as the most a claimant can still do despite his or her limitations, taking into account all of a claimant's medically determinable impairments.[34] In making this assessment, the ALJ is required to consider the combined effect of all medically determinable impairments, both severe and non-severe.[35] An "RFC assessment must include a narrative discussion of how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."[36] The ALJ is required to discuss the claimant's ability to perform sustained work activity in an ordinary work setting on a regular and

---

[33] 20 C.F.R. § 404.1529(b).

[34] 20 C.F.R. § 404.1545.

[35] 20 C.F.R. § 404.1545.

[36] SSR 96-8p, 1996 WL 374184 at *7.

continuing basis (8-hours per day, 5-days per week), and describe the maximum amount of each work-related activity the claimant can perform based on the evidence available in the case record.[37] The ALJ is also required to explain how any material inconsistencies in the case record were considered and resolved.[38]

Although such challenges most often arise in the context of challenges to the sufficiency of vocational expert testimony, the law is clear that an RFC assessment that fails to take all of a claimant's credibly established limitations into account is defective.[39] Moreover, because an ALJ's RFC assessment is an integral component of his or her findings at steps four and five of the sequential evaluation process, an erroneous or unsupported RFC assessment undermines the ALJ's conclusions at those steps and is generally a basis for remand.

## IV.   DISCUSSION

Plaintiff raises the following issues in his statement of errors:

(1)    "Whether the Administrative Law Judge erred and abused her discretion by failing to consider the limitations in Plaintiff's residual

---

[37] *Id.*

[38] *Id.*

[39] *See Rutherford v. Barnhart*, 399 F.3d 546, 554 n. 8 (3d Cir. 2005) (noting that an argument that VE testimony cannot be relied upon where an ALJ failed to recognize credibly established limitations during an RFC assessment is best understood as a challenge to the RFC assessment itself); *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 147 (3d Cir. 2007) (noting that an ALJ must include in the RFC those limitations which he finds to be credible).

functional capacity from those impairments that the Administrative Law Judge considered to be severe, including multiple sclerosis and obesity" (Doc. 12, p. 1);

(2)    "Whether the Administrative Law Judge erred and abused her discretion in failing to consider the limitations from those conditions that the Administrative Law Judge did not consider to be severe, or even mentioned in his decision, including Plaintiff's diagnosed and treated anxiety, depression, adjustment disorder, vertigo, and nerve pain" (Doc. 12, pp. 1-2); and

(3)    "Whether the Administrative Law Judge erred and abused her discretion in failing to afford proper weight to opinion from Dr. Mangeshkumar, Plaintiff's long time treating neurologist, as compared to the opinions from the State Agency Consultants" (Doc. 12, p. 2).

Based on our review of Plaintiff's statement of errors, and the arguments raised in his brief, we construe that Plaintiff is raising the following issues:

(1)    The ALJ did not properly evaluate the Maxwell/Mangeshkumar opinion because she did not discuss every limitation in the opinion, and did not consider the treatment relationship or specialization factors in 20 C.F.R. § 404.1520c;

(2)    The ALJ's analysis is defective because she did not identify anxiety, adjustment disorder, vertigo, or nerve pain as medically determinable impairments; and

(3)    Substantial evidence does not support the ALJ's RFC assessment because she did not incorporate the 20-minute breaks suggested in the Maxwell/Mangeshkumar opinion, and did not account for the workplace absences that would result from multiple sclerosis "flare ups."

We will begin our analysis by summarizing the ALJ's findings, and then address each issue.

### A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In her August 2021 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through June 30, 2020. (Admin. Tr. 17; Doc. 8-2, p. 18). Then, Plaintiff's application was evaluated at steps one through four of the sequential evaluation process. The ALJ also included an alternative finding at step five that, even if Plaintiff could not engage in his past relevant work, he would be able to engage in other work.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between February 26, 2019 (Plaintiff's alleged onset date), and June 30, 2020 (Plaintiff's date last insured) ("the relevant period"). *Id*.

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: multiple sclerosis and obesity. *Id*. The ALJ also found that Plaintiff had a medically determinable non-severe impairment of depressive disorder. (Admin. Tr. 18; Doc. 8-2, p. 19).

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 19; Doc. 8-2, p. 20).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in sedentary work as defined in 20 C.F.R. § 404.1567(a) except:

> he can stand and/or walk for a total of two (2) hours in an eight (8) hour workday in no greater than five (5) minute increments, can sit for up to six (6) hours in an eight (8) hour workday in no more than two (2) hour increments, can engage in occasional twisting, but can rarely (no more than 5% of the workday) stoop, climb ramps and stairs, and requires a fifteen (15) minute break every two (2) hours.

(Admin. Tr. 19; Doc. 8-2, p. 20).

At step four, the ALJ found that, during the relevant period, Plaintiff could engage in his past relevant work as a bookkeeper as that occupation is generally performed in the national economy. (Admin. Tr. 22; Doc. 8-2, p. 23).

The ALJ found in the alternative at step five that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 23-24; Doc. 8-2, pp. 24-25). To support her conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: call out operator, DOT #237.367-014; order clerk (food & beverage), DOT #209.567-014; and surveyor systems monitor, DOT #379.367-010. *Id*.

## B.     THE ALJ PROPERLY EVALUATED THE MAXWELL/MANGESHKUMAR OPINION

On June 3, 2021, treating source Kayla Maxwell, CRNP, completed an RFC questionnaire about the limiting effects of Plaintiff's multiple sclerosis. A neurologist, V. Mangeshkumar, M.D. also signed that questionnaire. (Admin. Tr. 449-454; Doc. 8-7, pp. 118-123). Among other things, in this questionnaire, the sources assessed that Plaintiff would need to have an unscheduled twenty-minute break once every two hours. (Admin. Tr. 451; Doc. 8-7, p. 120). This limitation exceeds the four, fifteen-minute breaks included in the ALJ's RFC assessment, and per the vocational expert would "exceed the typical break period and not be permitted without an accommodation by the employer." (Admin. Tr. 68; Doc. 8-2, p. 69). The Maxwell/Mangeshkumar opinion also suggests that Plaintiff would be absent from work one day per month. (Admin. Tr. 453; Doc. 8-7, p. 122). The issue of whether this limitation would erode the occupational base was not developed during the administrative hearing.

In her decision, the ALJ found that the Maxwell/Mangeshkumar opinion was only "partially persuasive." In doing so, the ALJ explained:

> I considered the opinion of Kayla Maxwell, CRNP, a treating source of the claimant, who determined on June 3, 2021 that the claimant can sit for a total of six (6) hours, stand and/or walk for a total of two (2) hours in an eight (8) hour workday, requires a job that permits him to shift positions at will from sitting, standing, or walking, <u>will require a break</u>

every two (2) hours for up to twenty (20) minutes each time, requires the use of a walker, can lift and/or carry up to ten (10) pounds occasionally, twenty (20) pounds rarely, and fifty (50) pounds never, can frequently look down, turn head right or left, look up, and hold head in a static position, can engage in occasional twisting, rare stooping and climbing of stairs, but never crouching, squatting, or climbing of ladders, and would miss about one (1) day per month due to the symptoms of his impairments (C9F). While I agree with a number of the limitations stated, I find that this opinion is not fully comprehensive as it does not sufficiently specify how much less than two (2) hours the claimant can stand and/or walk, and the limitation regarding the use of a walker is not supported in the record due to the absence of assistive device usage during treating appointments prior to the date last insured. I also find that this opinion is not consistent with the claimant's report that he cares for his pre-school aged son, tends to household chores of laundry, vacuuming, and cooking, and goes grocery shopping in stores (C7E, C4F). Accordingly, this opinion is partially persuasive.

(Admin. Tr. 21-22; Doc. 8-2, pp. 22-23) (emphasis added).

First, Plaintiff argues that the ALJ did not separately address each limitation set out in the Maxwell/Mangeshkumar opinion. We are not persuaded, however, that the ALJ is required to discuss every limitation set out in an opinion. Other courts to address this issue have similarly concluded that an ALJ is not required to discuss every limitation, and instead is required to articulate the persuasiveness of a source's opinions with enough detail and clarity to permit meaningful judicial review.[40] In

---

[40] *See e.g. Campbell v. Saul*, No. 1:20-CV-1715, 2021 WL 37478, at *16 (D.S.C. Jan. 5, 2021) ("it does not appear that 20 C.F.R. § 404.1520c and 416.920c require ALJs to separately consider each limitation in a medical source's opinion"); *B.C. v. Saul*, No. 20-1108-JWB, 2021 WL 411390, at *5 (D. Kan. Feb. 5, 2021).

this case, we find that although the ALJ does not discuss *every* limitation in the Maxwell/Mangeshkumar opinion, she did discuss most of them, including the unscheduled breaks and attendance limitations at issue in this case. Furthermore, this discussion is sufficient to permit judicial review. Therefore, remand is not required for additional explanation.

Second, Plaintiff argues that the ALJ's evaluation of the Maxwell/Mangeshkumar opinion is defective because the ALJ did not analyze the length of the treatment relationship, frequency of examination, or scope of that relationship, and did not consider that Dr. Mangeshkumar is a specialist. (Doc. 12, p. 26). He also argues that the state agency consultant opinions should be given less weight, based on those same factors. (Doc. 12, pp. 27-28). In response, the Commissioner correctly argues that, under the applicable regulation, 20 C.F.R. § 404.1520c, the ALJ is not required to articulate how she considered the factors of treatment relationship or specialization unless the ALJ finds that two or more opinions or prior medical findings about the same issue are both equally well-supported and consistent with the record, but are not exactly the same.[41] Plaintiff

---

[41] 20 C.F.R. § 404.1520c(b)(3).

does not articulate any basis that would require the ALJ to consider the additional factors in this case, therefore the ALJ's failure to do so is not a basis for remand.

### C.   THE ALJ'S FAILURE TO ADDRESS ANXIETY, ADJUSTMENT DISORDER, NERVE PAIN, AND VERTIGO AT STEP TWO DOES NOT REQUIRE REMAND

Plaintiff argues that the ALJ identified the following medically determinable non-severe impairments: anxiety, depression, adjustment disorder, vertigo, and nerve pain. (Doc. 12, p. 20). He argues that the ALJ's RFC assessment is incomplete because the ALJ did not account for the limitations these non-severe impairments cause.

As an initial matter, the ALJ did not identify or address any impairment related to anxiety, adjustment disorder, vertigo, and nerve pain at step two. These conditions were not considered as standalone impairments in the ALJ's decision. The Commissioner argues that these conditions were not analyzed as standalone impairments because, during Plaintiff's administrative hearing, these conditions were identified as symptoms of multiple sclerosis. Our review of the record reveals the following discussion occurred during the administrative hearing:

ALJ:   Okay. Terrific. And what is your argument as far as, I have the claimant has multiple sclerosis, obesity, anxiety, depression, and adjustment disorder, has had episodes of vertigo, nerve pain and dizziness. What would you allege are the severe medically determinable impairments?

Page 21 of 28

ATTY:    Well, Your Honor, I think some of the conditions that you listed are more symptoms of the multiple sclerosis. The nerve pain, the vertigo and some of those other issues that are listed are part of the multiple sclerosis diagnosis. So I would argue the multiple sclerosis primarily.

I don't think obesity in and of itself has any of those touch factors, Your Honor that we might see with like a cardiovascular or other type of disorder. With regard to again the nerve pain, the vertigo and even to some extent the depression and anxiety appear to all be related to the multiple sclerosis. So, I would, I would say it's the multiple sclerosis.

(Admin. Tr. 34-35; Doc. 8-2, pp. 35-36). The medical records do not include diagnoses of anxiety disorder, adjustment disorder, or vertigo. Plaintiff has not cited to any medical record that includes these diagnoses. Given counsel's statements at the administrative hearing that these "conditions" were in fact symptoms of Plaintiff's multiple sclerosis, and the fact that no diagnoses appear in the record, we find that the ALJ properly considered these issues as "symptoms" instead of standalone impairments. Furthermore, because these impairments were considered as "symptoms," the failure to label these impairments at step two is harmless.

Plaintiff's impairment of depression was diagnosed by a state agency consultant, and was identified as medically determinable and non-severe at step two.

To the extent Plaintiff alleges that these "symptoms" and the non-severe impairment of depression result in a greater degree of limitation than accounted for in the ALJ opinion, we will address this argument in section IV(D) of this opinion.

### D.   WHETHER THE ALJ IMPROPERLY EXCLUDED CREDIBLY ESTABLISHED LIMITATIONS FROM THE RFC ASSESSMENT

Plaintiff argues that the limitations set forth in the ALJ's RFC assessment are insufficient to address certain non-exertional limitations caused by Plaintiff's medically determinable severe and non-severe impairments. (Doc. 12, p. 13). Specifically, he alleges that the ALJ should have adopted a limitation from the Maxwell/Mangeshkumar opinion that Plaintiff would require four unscheduled 20-minute breaks (the ALJ's RFC only accommodates four 15-minute breaks that would be customarily provided in a usual work setting). He alleges that the four 20-minute breaks are necessary to accommodate the time Plaintiff would be "off task" during episodes of pain or fatigue (both mental and physical). He also argues that, due to the nature of multiple sclerosis, he experiences episodes or "flare ups" that would result in workplace absences. Plaintiff cites to a medical opinion estimating Plaintiff would be absent from work one day per month, and reports that in 2014 (five years before his onset date in this case) he was hospitalized for one month due to a flare up. (Doc. 12, p. 16).

The Commissioner argues that substantial evidence supports the ALJ's RFC assessment.

Plaintiff appears to suggest that the evidence he cites overwhelms the evidence the ALJ relies on.[42] We are not persuaded that the ALJ's RFC assessment is defective. In support of his argument Plaintiff cites to the following records:

(1)    A January 29, 2019 office visit for multiple sclerosis. The treatment records suggest that Plaintiff's condition was "stable" over the past year, with some complaints of generalized fatigue and weakness. (Admin. Tr. 363; Doc. 8-7, p. 32).

(2)    An August 26, 2019 "well exam." The well exam includes a "problem list" of "vision disorder," "numbness and tingling of the right face," "tingling of the right arm and leg," and "multiple sclerosis exacerbation." It also documents a past medical history of "dizziness" and "numbness and tingling on right side of body" as of January 2014. During the examination, a clinician noted that Plaintiff was positive for tingling, weakness, headaches and dizziness. (Admin. Tr. 335, 338, 343; Doc. 8-7, pp. 4, 7, 12).

(3)    A December 9, 2019 office visit with a neurologist for routine follow-up for multiple sclerosis. In the "history of present illness" section of the record, Plaintiff reported that in general he has been "ok" lately, but also noted that: his "processing speed was not the same," he had nerve pain he described as an "electric shock" that was responding to medication, and that he had numbness and tingling in his fingers and feet. During the physical exam, no significant abnormalities were documented. (Admin. Tr. 371; Doc. 8-7, p. 41).

(4)    A May 28, 2020 office visit with a neurologist for routine follow-up. Plaintiff reported fatigue and nerve pain, but said he was "ok" lately.

---

[42] *See e.g., Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (explaining that evidence is not substantial "if it is overwhelmed by other evidence.").

Page 24 of 28

He also reported that he had muscle spasms, chronic paresthesia, general weakness, and physical and mental fatigue. The objective examination from the same record was normal, including Plaintiff's attention and sensation. (Admin. Tr. 385; Doc. 8-7, p. 54).

(5)   An August 28, 2020 office visit with a neurologist for routine follow-up. Plaintiff reported the same symptoms as were documented in the May 2020 treatment record. The objective examination in the same record documents that Plaintiff's attention was normal, and his sensation was grossly normal. (Admin. Tr. 390; Doc. 8-7, p. 59).

As the Commissioner noted, Plaintiff relies, in large part, on the "history of present illness," which is composed of Plaintiff's statements about his symptoms. Plaintiff also relies on the Maxwell/Mangeshkumar opinion, and his own hearing testimony.

In the decision, the ALJ supported her assessment that Plaintiff's fatigue was not as severe as alleged based on the following evidence:

The claimant was diagnosed with multiple sclerosis in 2014, and is currently being treated with gilenya. The claimant complained of fatigue during a January 2019 treating visit. However, he also presented as alert and oriented to the three (3) spheres, and it was noted that he was in no acute distress. He walked with a normal gait and demonstrated no focal deficits (C3F, pg. 8, 10). The claimant was alert, cooperative, and in no acute distress during an August 2019 treating visit. He also walked with a normal gait and demonstrated intact motor strength, and sensation (C1F, pg. 9). The claimant endorsed fatigue and nerve pain during a December 2019 MS follow-up appointment. He also reported that his processing speed is not the same. However, he noted that he has been "OK" lately, despite needing to rest every day in the afternoon and having some stiffness and spasticity towards the evening. Although the claimant endorsed numbness and tingling in his fingers and feet, he also reported that these symptoms improve with the

use of gabapentin. In addition, he denied any vision changes. Upon examination, the claimant had intact coordination with no involuntary movements. He also ambulated with normal step length and speed without any loss of balance, and notes indicate that he did not use any assistive devices. Additionally, he denied any falls that resulted in injury within the past year (C3F, pg. 16-17).

January 2020 treating notes document normal pulmonary function tests for the past several years while on multiple sclerosis therapy. The claimant also denied fatigue and malaise during this visit, and presented as alert with normal mood, affect, and thought content upon examination (C3F, pg. 19-20, 23). A May 2020 MRI scan of the claimant's brain revealed moderate amounts of white matter demyelinating lesions consistent with a diagnosis of multiple sclerosis. However, this was noted to have improved since 2014, and remain unchanged since 2019. He also ambulated with a normal gait, and demonstrated normal coordination upon examination (C3F). The claimant reported fatigue during an August 2020 physical examination. However, he walked with a normal gait, demonstrated normal motor strength, and had sensations that were grossly intact (C4F, pg. 13). Notes also described him as alert and oriented to the three (3) spheres, with intact cranial nerves and normal sensations (C3F, pg. 36). The claimant presented to an October 2020 treating visit as alert, well-developed, and in no acute distress (C4F, pg. 6). He also indicated that he has had no trouble concentrating on things such as reading the newspaper or watching television during a November 2020 follow-up visit (C7F, pg. 5).

. . . .

The claimant's activities of daily living similarly do not suggest a disabling level of impairment. The claimant lives in a home with family. He cares for his five (5) year old son by helping him get dressed, preparing lunch and dinner, playing with him, and reading to him. The claimant also prepares food for the family two (2) to four (4) times per week for up to two (2) hours each time, and goes grocery shopping on an occasional basis. In addition, he is able to handle his personal grooming activities independently without issues, and he does chores

of vacuuming and laundry in the home. He also drives himself to and from places, and is able to go out alone (C7E). These activities of daily living are not suggestive of more than minimal functional limitations.

(Admin. Tr. 20-21; Doc. 8-2, pp. 21-22).

Although Plaintiff makes a strong case in his brief, reviewing the ALJ's decision as a whole and applying the appropriate deferential standard, we find that substantial evidence supports the ALJ's conclusion that Plaintiff's fatigue is not as severe as alleged. We similarly find that, given this conclusion, the ALJ's decision to include a 15-minute break schedule in the RFC is reasonable, and is not overwhelmed by conflicting evidence.

As to the attendance limitation, the most restrictive medical opinion on this issue suggests that Plaintiff could be expected to miss work one day per month. Plaintiff reports he was hospitalized for one month in 2014 during a "flare up," he has offered no evidence of any such hospitalization during the relevant period in this case (February 26, 2019 through June 30, 2020). Like the 20-minute breaks, the attendance limitation stems from Plaintiff's reports of fatigue. The ALJ found that this symptom was not as severe as alleged, and that conclusion is supported. Thus, we find no basis to disturb the ALJ's decision.

## V.    CONCLUSION

Accordingly, Plaintiff's request for relief is DENIED as follows:

(1)    The final decision of the Commissioner is AFFIRMED.

(2)    Final judgment will be issued in favor of the Commissioner.

(3)    Appropriate orders will be issued.

Date: March 24, 2023                    BY THE COURT

                                        *s/William I. Arbuckle*
                                        William I. Arbuckle
                                        U.S. Magistrate Judge